## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE:                                                          CASE NO. 21-10818

**RIVERSTREET VENTURES, LLC**                   **CHAPTER 11**

**DEBTOR**                                                **SECTION "A"**
*************************************************************************

### CHAPTER 11 PLAN OF REORGANIZATION OF THE DEBTOR

Riverstreet Ventures, LLC, as debtor and debtor-in-possession (referred to herein as "Debtor"), appearing herein through undersigned counsel, proposes the following Chapter 11 of Reorganization of the Debtor (the "Plan") pursuant to the provisions of 11 U.S.C. § 1121(a):

### INTRODUCTION

The Debtors propose this Plan pursuant to Chapter 11 of the Bankruptcy Code. All creditors are encouraged to consult the accompanying Disclosure Statement approved by the Bankruptcy Court before voting to accept or reject this Plan. No other solicitation materials, other than the Disclosure Statement, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of this Plan.

### ARTICLE I.
### DEFINITIONS

The following definitions apply to the Debtors' Disclosure Statement and Plan and all exhibits which may accompany same:

**1.1. Definitions**

**1.1.1.** **"Administrative Expense Claim"** means any right to payment constituting a cost or expense of administration of the Bankruptcy Cases allowed under and in accordance with, as applicable, Sections 330, 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Bankruptcy Estates, (b) any actual and necessary costs and expenses of operating the Debtors' businesses, (c) any indebtedness or obligations incurred or assumed by the Debtors during the Bankruptcy Cases, and (d) any compensation for professional services rendered and reimbursement of expenses incurred, including, without limitation, any fees or charges assessed against the Bankruptcy Estates pursuant to 28 U.S.C. § 1930.

**1.1.2.** **"Administrative Expense Claim Bar Date"** means the date which is thirty (30) days after the Confirmation Date.

**1.1.3.** **"Allowed"** means, with reference to any Claim against the Debtors, (a) any Claim against any of the Debtors that has been listed by such Debtor in its Schedules (as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has

been filed or no timely objection to allowance or request for estimation has been interposed; (b) any timely filed proof of claim either (i) as to which no objection has been or is interposed by the General Bar Date or Government Bar Date, as applicable, or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules or the Bankruptcy Court as to which any such applicable period of limitation has expired or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder of such Claim; (c) any Claim expressly allowed by a Final Order or under this Plan; or (d) any Claim that is compromised, settled or otherwise resolved pursuant to a Final Order; provided, however, that Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claim."

    **1.1.4.** **"Avoidance Actions"** means all causes of action, claims, remedies, or rights that may be brought by or on behalf of the Debtors or the Reorganized Debtors, arising under chapter 5 of the Bankruptcy Code, including avoidable transfers under Sections 547 and 549 of the Bankruptcy Code ("Preferential Transfers"), and fraudulent transfers under 11 U.S.C. § 548 and applicable state law (including fraudulent transfers or fraudulent conveyances, collectively, "Fraudulent Transfers") and Section 544 of the Bankruptcy Code, or under any related state or federal statutes or common law, regardless whether such action has been commenced prior to the Effective Date.

    **1.1.5.** **"Ballot"** means the form distributed to each Holder of an impaired Claim that is entitled to vote to accept or reject this Plan on which is to be indicated acceptance or rejection of this Plan.

    **1.1.6.** **"Bankruptcy Code"** means title 11 of the United States Code, as amended from time to time, as applicable to the Bankruptcy Cases.

    **1.1.7.** **"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Eastern District of Louisiana, exercising jurisdiction over these Bankruptcy Cases and all adversary proceedings and contested matters therein, or any other court of the United States having jurisdiction over these Bankruptcy Cases.

    **1.1.8.** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court pursuant to 28 U.S.C. § 2075, as amended from time to time, as applicable to the Bankruptcy Cases, and any Local Rules of Bankruptcy Court.

    **1.1.9.** **"Bridge Loan"** means that certain post-petition financing/loan from Real Estate Commercial Lending, LLC in the principal balance of $5,000,000.00.

    **1.1.10.** **"Bridge Loan Collateral"** means the Collateral securing payment of the Bridge Loan.

    **1.1.11.** **"Bridge Loan Documents"** means any and all promissory notes, security and collateral agreements, loan agreements, deeds of trust, mortgages, UCC financing statements, acts of personal guaranty evidencing, describing, giving rise to or securing payment of the Bridge Loan.

    **1.1.12.** **"Business Day"** means any day other than a Saturday, Sunday, or any other day on which banking institutions in New York City, New York are required or authorized to close by law or executive order.

**1.1.13.** **"Cash"** means legal tender of the United States of America.

**1.1.14.** **"Cause of Action"** means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, cross claims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims or causes of action whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date. Causes of Action includes Avoidance Actions.

**1.1.15.** **"Chapter 11"** means Chapter 11 of the Bankruptcy Code.

**1.1.16.** **"Claim"** has the meaning set forth in Section 101(5) of the Bankruptcy Code.

**1.1.17.** **"Claimant"** means the Holder of any Claim.

**1.1.18.** **"Claims Register"** means the list of claims maintained by the Clerk of the Bankruptcy Court listing all Claims filed in the Bankruptcy Cases.

**1.1.19.** **"Class"** means the group or category of Holders of Claims or Existing Equity Interests which are classified by this Plan pursuant to Section 1122 of the Bankruptcy Code or pursuant to an order of the Bankruptcy Court.

**1.1.20.** **"Class 5 Cash Interest Payment"** means the payment of simple interest at the rate of five percent (5%) per annum accrued on the principal balance of Allowed Class 5 Claims from the day the Confirmation Order becomes a Final Order through the Construction Loan Closing.

**1.1.21.** **"Class 5 Quarterly Interest Payment"** means the payment of simple interest at the rate of five percent (5%) per annum accrued on the principal balance of Allowed Class 5 Claims from the Construction Loan Closing until issuance of a Certificate of Occupancy.

**1.1.22.** **"Collateral"** means any property or interest in property of the Bankruptcy Estate of the Debtor subject to a valid and properly perfected Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law; and (ii) any acts of guaranty of payment of such Claim.

**1.1.23.** **"Confirmation"** means the determination of the Bankruptcy Court, evidenced by the Confirmation Order, to confirm this Plan.

**1.1.24.** **"Confirmation Date"** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**1.1.25.** **"Confirmation Hearing"** means the hearing conducted by the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**1.1.26. "Confirmation Order"** means the order or orders of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

**1.1.27. "Construction Lender"** means the entity that will fund the post-Effective Date loan to finance the construction of the Debtor's Multi-family Development.

**1.1.28. "Construction Loan"** means that certain post-confirmation financing/loan made to finance the construction of the Debtor's Multi-family Development.

**1.1.29. "Construction Loan Closing"** means that date that the Construction Loan is funded.

**1.1.30. "Construction Loan Collateral"** means the Collateral securing payment of the Construction Loan.

**1.1.31. "Construction Loan Documents"** means any and all promissory notes, security and collateral agreements, loan agreements, deeds of trust, mortgages, UCC financing statements, acts of personal guaranty evidencing, describing, giving rise to or securing payment of the Bridge Loan.

**1.1.32. "Contingent Claim"** means any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, any event, which event has not yet occurred, happened or been triggered as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the Holder of such Claim and whether or not a relationship between the Holder of such Claim and the Debtors now or hereafter exists or previously existed.

**1.1.33. "Covered Parties"** shall mean all of the present attorneys and professionals of any of the Debtors whose retention has been approved by the Bankruptcy Court, before or after the Petition Date up to and including the Effective Date. For the avoidance of doubt, the term "Covered Parties" shall not include any of the Insider Parties.

**1.1.34. "Creditor"** has the meaning as set forth in Section 101(10) of the Bankruptcy Code and is the Holder of one or more Claims.

**1.1.35. "Cure Amount Claim"** means any Claim arising out of the rejection of an executory contract or unexpired lease pursuant to Section 365 of the Bankruptcy Code. Allowed Rejection Claims are classified and shall be treated as an Unsecured Claim in the Bankruptcy Case in which the Claim arose.

**1.1.36. "Cure Amount Claim Bar Date"** means the later of (i) the Effective Date or (ii) ten (10) days after the receipt of the notice of the amendment of Schedule 11.1 of this Plan.

**1.1.37. "Debt"** means liability on a Claim.

**1.1.38. "Debtor" or "Riverstreet"** means Riverstreet Ventures, LLC.

**1.1.39. "Disbursing Agent"** means the Entity or Entities, which shall initially be the Reorganized Debtor, to serve in such role, to distribute all or any portion of the Plan Distributions.

**1.1.40. "Disclosure Statement"** means the Disclosure Statement accompanying this Plan, including, without limitation, all exhibits, schedules and attachments thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

**1.1.41. "Disclosure Statement Order"** means the order of the Bankruptcy Court approving, among other things, the Disclosure Statement and establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject this Plan.

**1.1.42. "Disputed"** means, with reference to any Administrative Expense Claim or Claim, any such Administrative Expense Claim or Claim (a) to the extent neither Allowed nor disallowed under this Plan or a Final Order nor deemed Allowed under Sections 502, 503 or 1111 of the Bankruptcy Code; (b) which has been or hereafter is listed by a Debtor on its Schedules as unliquidated, disputed or contingent and which has not been resolved by written agreement of the parties or a Final Order; or (c) as to which the Debtors or any other party in interest has interposed a timely objection and/or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order. Prior to the earlier of the time an objection has been timely filed and the expiration of the time within which to object to such Claim set forth herein or otherwise established by order of the Bankruptcy Court, a Claim shall be considered Disputed to the extent that the amount of the Claim specified in a proof of claim exceeds the amount of the Claim scheduled by the Debtors as not disputed, contingent or unliquidated (but only to the extent of such excess portion).

**1.1.43. "Disputed Claim Amount"** means the amount set forth in the proof of claim or Schedules relating to a Claim that is Disputed or an amount estimated pursuant to an order of the Bankruptcy Court in respect of a Claim that is Disputed in accordance with Section 502(a) of the Bankruptcy Code and Bankruptcy Rule 3018.

**1.1.44. "Distribution"** means any distribution to the various Classes pursuant to the terms of this Plan.

**1.1.45. "Distribution Record Date"** means the Effective Date.

**1.1.46. "Effective Date"** or **"Effective Date of this Plan"** means the date that is the first Business Day after the conditions to the effectiveness of this Plan specified in Article XI hereof have been satisfied or waived.

**1.1.47. "Entity"** has the meaning set forth in Section 101(15) of the Bankruptcy Code.

**1.1.48. "Estate"** means the bankruptcy estate of the Debtor in this case pursuant to Section 541 of the Bankruptcy Code.

**1.1.49. "Existing Equity Interest"** means, without duplication, all membership interests of and in the Debtor, issued and outstanding immediately prior to the Effective Date, including, but not limited to, (a) all unexercised incentive stock or membership interest options, non-qualified stock or membership interest options, and stock or membership interest appreciation rights granted under any

sponsored stock or membership interest option plans, (b) any other unexercised options, warrants, or rights, contractual or otherwise, if any, to acquire or receive an Equity Interest existing immediately before the Effective Date, and (c) all interests in the Debtor issued and held in treasury as of immediately before the Effective Date.

    **1.1.50.** **"Final Order"** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reserved, vacated or stayed and as to which (a) the time to appeal or move for a new trial, re-argument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, re-argument or rehearing shall then be pending; or (b) if an appeal, new trial, re-argument or rehearing thereof has been sought and a stay has been granted or a bond has been posted pursuant to applicable law, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied or a new trial, re-argument or rehearing shall have been denied or resulted in no modification of such order, and (ii) the time to take any further appeal, or move for a new trial, re-argument or rehearing shall have expired.

    **1.1.51.** **"General Bar Date"** means November 8, 2021, fixed by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3), is the deadline by which all Persons asserting Claims against the Debtors (other than Administrative Expense Claims) are required to file proofs of claim or be forever barred from asserting such Claims against the Debtor or their property and from voting on this Plan and/or sharing in any distributions hereunder.

    **1.1.52.** **"General Unsecured Claim"** means any Claim for which no property of the Debtors or the Bankruptcy Estates serves as security or collateral. It also consists of the Claims for unsecured debts, liabilities, and demands or any character whatsoever owed by the Debtor, including, without limitation, all Claims noted on the Schedules filed herein, all amendments hereto, and all Claims by Persons having actual and/or constructive notice or knowledge of these Bankruptcy Cases.

    **1.1.53.** **"General Unsecured Creditor"** means the Holder of a General Unsecured Claim against the Debtor.

    **1.1.54.** **"Government Bar Date"** means December 20, 2021, fixed by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3), is the deadline by which all Governmental Units asserting Claims against the Debtor (other than Administrative Expense Claims) are required to file proofs of claim or be forever barred from asserting such Claims against the Debtors or their property and from voting on this Plan and/or sharing in any distributions hereunder.

    **1.1.55.** **"Government Unit"** has the meaning set forth in Section 101(27) of the Bankruptcy Code.

    **1.1.56.** **"Holder"** means the holder, as of the Distribution Record Date, of any Claim, including without limitation any one or more of Administrative Expense Claims, Priority Claims, or General Unsecured Claims.

    **1.1.57.** **"Impaired"** means with respect to any Class of Claims or Existing Equity Interests under this Plan in which this Plan has altered the legal, equitable, and contractual rights of such Claims or Existing Equity Interests, and a Claim is Impaired unless it meets one of the exceptions specified in Section 1124 of the Bankruptcy Code.

1.1.58. **"Insider"** shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

1.1.59. **"Insider Claims"** means any Administrative Claims, Secured Claims or General Unsecured Claims held by any Insider.

1.1.60. **"Insider Parties"** means any Insider together with each of their respective present or former shareholders, members, officers, directors, managers, employees, successors, assigns, heirs, agents, advisors, attorneys, insiders, and professionals (each an Insider Party).

1.1.61. **"Investor"** means a General Unsecured Creditor whose claim is evidenced by a promissory note payable by Riverstreet Ventures, LLC and identified in Schedule 4.1.

1.1.62. **"Investor Claims"** means the General Unsecured Claims of Investors.

1.1.63. **"IRC"** means the Internal Revenue Code of 1986, as amended.

1.1.64. **"Jam"** shall mean Jam Trading, LLC.

1.1.65. **"Lien"** has the meaning set forth in Section 101(37) of the Bankruptcy Code.

1.1.66. **"Lion"** shall mean Lion Financial, LLC.

1.1.67. **"Mathes Brierre"** means Mathes Brierre, A Professional Corporation.

1.1.68. **"Mathes Brierre Appeal"** means the Debtor's appeal of the Mathes Brierre Judgment pending in the Louisiana Fourth Circuit Court of Appeals.

1.1.69. **"Mathes Brierre Claim"** means the claim of Mathes Brierre.

1.1.70. **"Mathes Brierre Judgment"** means the judgment obtained by Mathes Brierre against the Debtor on January 21, 2021, in the principal amount of $600,000.00.

1.1.71. **"Mathes Brierre Lien"** means the judicial mortgage of Mathes Brierre secured by the Debtor's real property.

1.1.72. **"Mathes Brierre Settlement Agreement"** means the agreement between the Debtor and Mathes Brierre dismissing all claims related to the Mathes Brierre Judgment and the Mathes Brierre Appeal.

1.1.73. **"Mathes Brierre Settlement Payment"** means the sum of $50,000.00.

1.1.74. **"Net Sales Proceeds"** mean gross sales proceeds less the costs and expenses associated with such sale, including, without limitation, any costs associated with or arising out of any required pre-sale repairs, title or license transfer, taxes or third-party commission.

1.1.75. **"New Constituent Documents"** means such certificates or articles of incorporation, formation, or conversion, limited liability company agreements, by-laws, or such other applicable formation and governance documents of Reorganized Riverstreet Ventures. The New Constituent Documents shall be in form and substance reasonably acceptable to the principals of NEWCO

Holdings.

**1.1.76.** **"New Equity Interests"** means the equity interests to be issued under the Plan by Riverstreet Ventures to Holders of Allowed Class 5 Claims and NEWCO Holdings as of and upon closing of the Construction Loan.

**1.1.77.** **"NEWCO" or "NEWCO Holdings"** means the limited liability company or other form of entity to be issued the New Equity Interests under the Plan.

**1.1.78.** **"NEWCO Principals"** means the Reorganized Debtor, Holders of Allowed Class 5 Claims and the Construction Lender.

**1.1.79.** **"Payment Plan"** shall mean the payments to the Debtor's Creditors provided in Articles III and IV of this Plan.

**1.1.80.** **"Person"** has the meaning set forth in Section 101(41) of the Bankruptcy Code.

**1.1.81.** **"Petition Date"** means June 23, 2021, the date on which the Debtor filed its voluntary petition.

**1.1.82.** **"Plan"** means this Chapter 11 Plan of Reorganization of the Debtor, including, without limitation, the exhibits and schedules hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

**1.1.83.** **"Plan Distributions"** means a payment or distribution made under the Plan to Holders of Allowed Claims or other eligible Entities

**1.1.84.** **"Plan Supplement"** means certain forms of documents and information specified in this Plan.

**1.1.85.** **"Priority Claim"** means a Claim entitled to priority in payment as specified in Sections 507(a)(1)-(10) of the Bankruptcy Code.

**1.1.86.** **"Priority Tax Claim"** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.1.87.** **"Professional Fee Claim"** means a Professional's Claim for compensation or reimbursement of costs and expenses under Sections 327, 328, 330, 331, 503(b) (other than 503(b)(4)) or 1103 for services rendered to the Debtors on and after the Petition Date but before and including the Effective Date.

**1.1.88.** **"Pro Rata"** means, with reference to any distribution on account of any Allowed Claim in any Class, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of Allowed Claims in such Class.

**1.1.89.** **"Professional"** means any Court-approved professional Person employed by the Debtor or the Unsecured Creditors Committee in the Bankruptcy Cases at any time before the Confirmation Date.

**1.1.90. "Property of the Estate"** is defined in Section 541 of the Bankruptcy Code.

**1.1.91. "RECL"** means Real Estate Commercial Lending, LLC.

**1.1.92. "Rejection Claim"** means any Claim arising out of the rejection of an executory contract or unexpired lease pursuant to Section 365 of the Bankruptcy Code. Allowed Rejection Claims are classified and as an unsecured claim in the Class of unsecured claims for the counterparty to the rejection claim.

**1.1.93. "Rejection Claim Bar Date"** means that date that is ten (10) days after the Confirmation Date.

**1.1.94. "Reorganized Debtor" or "Reorganized Riverstreet"** means the Debtor after the Effective Date, or any successor thereto by merger, consolidation or otherwise.

**1.1.95. "Restructuring Transactions"** means the transactions described in Article 6.2 of this Plan.

**1.1.96. "Retained Causes of Action"** means any Causes of Action specifically or implicitly preserved and retained under this Plan.

**1.1.97. "Sale"** shall mean the sale of the assets of the Debtors if the Court does not confirm the Debtor's Payment Plan.

**1.1.98. "Schedules"** means, collectively, the schedules of assets and liabilities, schedules of executory contracts and unexpired leases and statements of financial affairs filed by the Debtors under Section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms in the Bankruptcy Case, as have been amended or supplemented through the Confirmation Date pursuant to Bankruptcy Rule 1007.

**1.1.99. "Secured Claim"** means any Claim that is secured by a Lien on Collateral.

**1.1.100. "Secured Creditor"** means those Creditors who possess valid and perfected Liens against any property of the Debtor.

**1.1.101. "Unliquidated Claim"** means any Claim, the amount of liability for which has been not fixed, whether pursuant to agreement, applicable law or otherwise, as of the date on which such Claim is asserted or sought to bet estimated.

**1.1.102. "Unsecured Claim"** means any Claim that is not secured by a Lien on Collateral.

**1.1.103. "Voting Class"** means a Class specified as such in Article III of this Plan.

**1.2. Interpretation: Application of Definitions and Rules of Construction.**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule, or exhibit references in this Plan are to the respective section in, article of,

or schedule or exhibit to this Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein.  A term used in this Plan that is not defined in this Plan shall have the meaning assigned to that term in the Bankruptcy Code.   The rules of construction contained in Section 102 shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

Unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply as though this Plan is an order of the Court. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan. Any reference to an Entity as a Holder of a Claim or Equity Interest includes that Entity's legal successors and assigns.

This Plan is the product of extensive discussions and arm's-length negotiations and has been made subject to required disclosure and solicitation of votes under Section 1125.  The documentation related to the Restructuring Transactions, the Plan and Disclosure Statement shall not be construed against the drafter. To the extent that the provisions of this Plan conflict or are inconsistent with the provisions set forth in any document in the Plan Supplement, the Plan, as applicable, shall govern.

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## ARTICLE II.
## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE
## EXPENSE AND PRIORITY CLAIMS

**2.1    Administrative Expense Claims.**

**2.1.1    Administrative Expense Claims**. Except to the extent that any Entity entitled to payment of any Allowed Administrative Expense agrees to a less favorable treatment, each Holder of an Allowed Administrative Expense shall receive Cash equal to the unpaid portion of its Allowed Administrative Expense, on the latest of (a) the Distribution Date, (b) the date on which its Administrative Expense becomes an Allowed Administrative Expense, and (c) the date on which its Administrative Expense becomes payable under any agreement relating thereto, or as soon thereafter as is reasonably practicable. Notwithstanding the foregoing, any Allowed Administrative Expense based on a liability incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid by the Debtor or the Reorganized Debtor as Administrative Expenses in the ordinary course of the Debtor's businesses, in accordance with the terms and conditions of any agreement relating to such other Administrative Expenses or upon such other terms as may be agreed upon between the Holder of such Administrative Expense and the Debtor, without application by or

on behalf of any such parties to the Bankruptcy Court, and without notice and a hearing.

Applications for payment of Administrative Expense Claims (including requests for compensation under Section 503(b)(3), (4), and (9)) must be filed with the Bankruptcy Court and served on the Reorganized Debtor and Plan Proponents no later than the Administrative Expense Claim Bar Date. **The failure to file and serve properly upon Riverstreet, the Reorganized Riverstreet and other parties-in-interest, in accordance with the Bankruptcy Code and the Bankruptcy Rules, such a motion or application for allowance and payment of an Administrative Expense Claim or a Professional Administrative Expense Claim by the Administrative Expense Claim Bar Date shall result in such Administrative Expense Claim being forever barred and discharged. For the avoidance of doubt, an Administrative Expense Claim asserted through a proof of Claim filed in the Bankruptcy Cases is invalid unless a timely motion for allowance and payment of an Administrative Expense Claim is filed.** Notwithstanding the foregoing, the following parties shall not be required to file applications for payment: (i) Administrative Expenses incurred in the ordinary course of business pursuant to Article 2.1.1 hereof; and (ii) Claims for United States Trustee fees.   All other Holders of alleged Administrative Claims must satisfy their burden regarding allowance and payment of their Administrative Expense Claim and must file timely applications seeking approval thereof.

**2.1.2** **Payments to Holders of Allowed Administrative Expense Claims.** To the extent any non-Professional Administrative Expense Claims are Allowed pursuant to Article II of this Plan, and unless otherwise agreed to by the Holder of such Claim prior to the Effective Date of this Plan, the Holder of any Allowed Administrative Expense Claim will be paid by the Reorganized Debtor in Cash the Allowed amount of such Claim on the later of (a) the Effective Date, or (b) the date on which such Administrative Expense Claim is determined to be Allowed by Final Order of the Bankruptcy Court.

**2.1.3** **United States Trustee Fees.** With respect to amounts due to the Office of the United States Trustee, the Reorganized Debtor shall pay the appropriate sum required by 28 U.S.C. § 1930(a)(6) within thirty (30) days of the Effective Date. The Reorganized Debtor shall timely pay the to the United States Trustee any and all post-confirmation quarterly fees as required by 28 U.S.C. § 1930(a)(6) until such time as these Bankruptcy Cases are converted, dismissed or closed by the Court. The Reorganized Riverstreet shall be entitled to an order administratively closing this   Bankruptcy Case on or after the Effective Date pending the filing of a motion seeking a Final Decree and order closing this Bankruptcy Case. Additionally, the Reorganized Debtor shall submit to the United States Trustee post-confirmation quarterly operating reports in the format prescribed by the United States Trustee until such time as these Bankruptcy Cases are converted, dismissed or closed by the Court.

**2.1.4** **Professional Administrative Expense Claims**. Any Professional seeking any award by the Bankruptcy Court of compensation for services rendered and reimbursement of expenses incurred through and including the Confirmation Date under Sections 330, 331, 503(b)(2), 503 (b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file, on or before the Administrative Claim Bar Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred; (b) be paid in full on the date on which such Professional Administrative Expense Claim is Allowed by Final Order; and (c) be able to apply any amount held in retainer up to amounts as allowed by Final Order by the Bankruptcy Court. Notwithstanding the immediately preceding sentence, the Chiron Attorney Fee Claim shall be payable on the Effective date

without the need for application for approval thereof.

## 2.2    Priority Claims.

**2.1.5    Other Priority Claim**. The Debtor contends that there are no Allowed Other Priority Claims. To the extent there are any Other Priority Claims are Allowed Claims, each Holder of such Claim will receive the treatment required by Section 1129(a)(9)(A) or (B) of the Bankruptcy Code, as appropriate.

**2.1.6    Priority Tax Claims.** The Holder of any Allowed Priority Tax Claim will be paid based upon a five (5) year amortization and the interest rate allowed by law on the Effective Date. Payments shall be made quarterly with the first payment commencing on the first Business Day of the first full month after the Effective Date.

## ARTICLE III.
## CLASSIFICATION OF CLAIMS AND EXISTING EQUITY INTERESTS

### 3.1    Classification of Claims.

The following are the Classes of Claims against and Existing Equity Interests in the Debtor:

| Class | Designation |
|-------|-------------|
| 1 | Lion Financial |
| 2 | Jam Trading |
| 3 | Mathes Brierre |
| 4 | General Unsecured Claims |
| 5 | Investor Claims |
| 6 | Existing Equity Interests |

## ARTICLE IV.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1**    **Lion Financial Claim (Class 1)**. Class 1 shall consist of the secured claim of Lion.

**4.1.1    Treatment of the Lion Financial Secured Claim**. On or before the Effective Date, except to the extent that a Holder of a Class 1 Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in treatment of the Lion Secured Claim against the Debtor, the Lion Secured Claim will be refinanced by the Bridge Loan from Real Estate Commercial Lending, LLC. The Bridge Loan shall be evidenced by the RECL Loan Documents and will be Secured by a first mortgage on the Property. RECL will maintain the same rank and to the same extent as the Lion Mortgage as of the Petition Date, to secure the payment of the Bridge Loan.

**4.1.2  Voting**: Class 1 is Unimpaired by the Plan. Each Holder of an Allowed Class 1 Claim is not entitled to vote to accept or reject the Plan.

**4.2  Jam Trading Claim (Class 2)**. Class 2 shall consist of the secured claim of Jam Trading.

**4.2.1  Treatment of the Jam Trading Secure Claim**. On or before the Effective Date, except to the extent that a Holder of a Class 2 Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in treatment of the Jam Secured Claim against the Debtor, the principal portion of the Jam Secured Claim will be paid in full from the proceeds of the Bridge Loan, but the interest due upon the claim shall be paid at the rate of 6% from the Petition Date, rather than the rate of 12% for said period which would otherwise be due.

**4.2.2  Voting**: Class 2 is Impaired by the Plan. Each Holder of an Allowed Class 2 Claim is entitled to vote to accept or reject the Plan.

**4.3  Mathes Brierre Secured Claim (Class 3)**. Class 3 consists of the Holders of Mathes Brierre Secured Claim.

**4.3.1  Treatment of Mathes Brierre Secured Claim**. Except to the extent that a Holder of an Allowed Class 3 Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in treatment of the Mathes Brierre Secured Claim against the Debtor, the Secured Claim of Mathes Brierre shall be treated as follows:

- The Secured Claim of Mathes Brierre shall be amortized over a period of twenty (20) years, with a balloon payment on the remaining balance due after ten (10) years and repaid in principal and interest at the current Louisiana Judicial Interest rate of three- and one-half percent (3.5%) per annum.  Monthly payments of principal and interest will commence 30 days after the Mathes Brierre Judgment becomes a Final Order, with payments continuing on the fifteenth (15th) day of each successive calendar month.  The Debtor reserves the right to prepay all or any portion of this claim at any time without penalty.  Mathes Brierre shall retain its lien and security interests until the Class 3 claim is paid in full.

- If the Mathes Brierre Appeal results in a reduction of the Mathes Brierre Claim to $0, no payments will be due to Class 3.  The Mathes Brierre Lien shall be cancelled.

- Mathes Brierre may elect to accept on the Effective Date the Mathes Brierre Settlement Payment in full and final satisfaction, compromise, settlement, release, and discharge of the Mathes Brierre Claim.  Should Mathes Brierre elect this alternative treatment, the Debtor and Mathes Brierre will enter into the Mathes Brierre Settlement Agreement.

**4.3.2  Voting**: Class 3 is Impaired by the Plan. Each Holder of an Allowed Class 3 Claim is entitled to vote to accept or reject the Plan.

**4.4** **General Unsecured Claims (Class 4).** Class 4 consists of the Holders of General Unsecured Creditors that are not Investors.

**4.4.1** **Treatment:** Holders of Allowed Class 4 Claims will be paid a pro rata share of $15,000.00 in full on the Effective Date in full satisfaction of Claims.

**4.4.2** **Voting:** The Holders of Class 4 Claims are presumed to reject the Plan and therefore, though they are impaired, are not entitled to vote to accept or reject the Plan.

**4.5** **Unsecured Investor Claims (Class 5)**: Class 5 consists of the Holders of Investor Claims.

**4.5.1** **Treatment**: Except to the extent that a Holder of an Allowed Class 5 Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in treatment of its Claim against the Debtor, the Class 5 Investor Claims shall be treated as follows:

- Within 30 days of the Construction Loan Closing, each such Holder shall receive its Class 5 Cash Interest Payment from the proceeds of the Construction Loan. Holders of Allowed Class 5 Claims will also be issued a pro rata share of seven and one-half percent (7.5%) of the membership interests of NEWCO, to be computed on the allowed amounts of their respective claims. Ninety (90) days after the Construction Loan Closing, Holders of Allowed Class 5 Claims will begin receiving Class 5 Quarterly Interest Payments. Those payments shall terminate upon the issuance of a Certificate of Occupancy to the NEWCO.

- Should the Debtor liquidate its assets, Class 5 claimants shall receive their pro rata share of the sale proceeds after all Administrative Claims, Priority Tax Claims, and Classes 1-4 have been paid in full. The Debtor reserves the right to prepay all or any portion of this claim at any time without penalty.

**4.5.2** **Voting**: The Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

**4.6** **Riverstreet Existing Equity Interests (Class 6).** Class 6 consists of the Holders of Existing Equity Interests.

**4.6.1** **Treatment**: On the Effective Date, Existing Equity Interests, shall relinquish seven- and one-half percent (7.5%) of its Equity Interests to Allowed Class 5 Holders. The Debtor's sole member shall also relinquish fifty percent (50%) of the Equity Interests pursuant to the Construction Lender. Existing Equity Interests shall not receive any distributions until after the Effective Date. Should the assets of the Debtor be liquidated, Holders of Equity Interests shall not receive any distributions until all Administrative Claims, Priority Tax Claims, and Classes 1-5 have been paid in full.

**4.6.2** **Voting**: The Holders of Class 6 Existing Equity Interests are impaired and

entitled to vote to accept or reject the Plan.

**4.7** **Allowed Claims and Interests**. Notwithstanding any provision herein to the contrary, the Debtor or Reorganized Riverstreet shall only make Distributions on account of Allowed Claims or Interests. A Claim that is Disputed by the Debtor or Reorganized Riverstreet as to its amount only shall be deemed Allowed in the amount the Debtor or Reorganized Riverstreet admits owing and Disputed as to the remainder

## ARTICLE V.
## NONCONSENSUAL CONFIRMATION

**5.1** **Use of Section 1129(b)**. In the event that any Class votes to reject the Plan, the Debtor reserves the right to pursue Confirmation of an alternative plan of reorganization pursuant to Section 1129(b), or to request that the Bankruptcy Court confirm or "cram down" the Plan on a non-consensual basis with respect to each non- accepting Class pursuant to Section 1129(b). With respect to Classes that are deemed to reject this Plan, the Plan Proponents shall request that the Bankruptcy Court confirm or "cram down" the Plan on a non-consensual basis pursuant to Section 1129(b).

## ARTICLE VI.
## ADMINISTRATION, IMPLEMENTATION AND EXECUTION OF THIS PLAN

**6.1** **Administration by the Reorganized Riverstreet.** Except as otherwise provided herein, this Plan will be administered and implemented by Reorganized Riverstreet, which shall be vested with full legal power, capacity and authority, and shall be directed to administer and implement this Plan.

**6.2** **Authorizing The Restructuring Transactions**. On the Effective Date, and pursuant to the Plan or the applicable Plan Supplement documents, Riverstreet and Reorganized Riverstreet, as applicable, shall enter into the contemplated in the Plan, and shall take any actions as may be reasonably necessary or appropriate to implement this Plan, including one or more mergers, consolidations, conversions, dissolutions, transfers or liquidations as may be determined by the Debtor or the Reorganized Debtor to be necessary or appropriate that are consistent with the terms of the Plan. The actions to effect the Restructuring Transactions may include: (i) the execution and delivery of appropriate agreements or other documents of capital contribution, merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable state law and any other terms to which the applicable Entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (iii) the filing of appropriate certificates or articles of incorporation or reincorporation, or organization, or amendments thereof, or formation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; and (iv) all other actions that the applicable Entities determine to be reasonably necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with the Restructuring Transactions.

**6.3**     **The Restructuring Transactions**. The Restructuring Transactions shall include the following:

- On or prior to the Effective Date, the Debtor will obtain the Bridge Loan from RECL in the amount of $5,000,000.00. The Loan proceeds will be used to refinance the existing Lion Secured Claim, pay Classes 2 and 4 as set forth above, pay administrative claims, and pay for the completion of all architectural and engineering work needed to obtain necessary permits. The Bridge Loan will be secured by a first mortgage on the Property and a personal guaranty by Philip Spiegelman.

- As of and on the Effective Date, the New Equity Interests in Riverstreet shall be issued to Holders of Allowed Class 5 Claims and the Construction Lender, in consideration of (i) the prior contributions by Holders of Allowed Class 5 Claims, and (ii) the contribution of construction financing by the Construction Lender. As of and on the Effective Date and after the completion of the Restructuring Transactions, NEWCO Holdings shall own 100% of Reorganized Riverstreet. The Reorganized Debtor reserves the right to either form a new entity or operate the existing Riverstreet Ventures, LLC as NEWCO.

- Reorganized Riverstreet shall be manager managed. NEWCO Holdings shall be manager managed and the managers of NEWCO Holdings shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such other actions, as may be reasonably necessary or appropriate, to effectuate and further evidence the terms and conditions of this Plan, on behalf of Reorganized Riverstreet, and shall be authorized to certify or attest to any of the foregoing actions.

- Reorganized Riverstreet shall execute, deliver, and file the New Constituent Documents without the need of any further corporate or equity holder action. Except as otherwise expressly provided in the New Constituent Documents, Reorganized Riverstreet shall not be obligated to register the New Equity Interests under the Securities Act or to list the New Equity Interests for public trading on any securities exchange.

- All of the shares of New Equity Interests issued pursuant to the Plan shall (i) be uncertificated and shall be duly authorized, validly issued, fully paid, and non-assessable, and (ii) deemed issued as of the Effective Date regardless of the date on which they are actually distributed, and the Plan Distributions thereof, may be made by delivery or book-entry transfer thereof by the applicable Disbursing Agent.

As of the Effective Date NEWCO Holdings shall exercise all of the rights with respect of the New Equity Interests (so that such Holder will be deemed for tax purposes to be the owner of the New Equity Interests).

**6.4** **No Registration**. The New Equity Interests are or may be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and any applicable state securities law (a "Blue Sky Law"). As more particularly set forth in Article XV hereof, the offer and sale of the New Equity Interests pursuant to the Plan is, and subsequent transfers by the holders thereof that are not "underwriters" (as defined in section 2(a)(11) of the Securities Act and section 1145(b)(1) of the Bankruptcy Code) will be, exempt from federal and state securities registration requirements under various provisions of the Securities Act, the Bankruptcy Code, and any applicable state Blue Sky Law.

**6.5** **Privileges of Riverstreet**. On the Effective Date, all the Debtor's privileges, including, but not limited to, corporate privileges, confidential information, work product protections, attorney-client privileges, and other immunities or protections (the "Privileges") shall be transferred, assigned and delivered to the Reorganized Debtor, without waiver, limitation or release, and shall vest with the Reorganized Debtor. The Reorganized Debtor shall hold, and be the beneficiary of, all Privileges and shall be entitled to assert all Privileges on and after the Effective Date, and the Reorganized Debtor shall be entitled to assert such privilege and immunity to the same extent that the Debtor or the Bankruptcy Estate was entitled to do so prior to the Effective Date. For purposes of clarity, this Article 6.6 is not intended to expand or restrict the rights, if any, of third parties to their own privileges or any common interest or joint privileges. Such privileges, if any, are not waived or transferred by this provision.

**6.6** **Sources of Cash Consideration for Plan Distributions.** The Reorganized Debtor shall fund the Distributions with Cash on hand, including Cash from the Bridge Loan, as well as additional funding provided by NEWCO Holdings to the Reorganized Debtor as necessary.

6.7 **General Settlement of Claims and Interests**. Pursuant to Section 1123 and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, this Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.

6.8 **Entity (or Corporate) Action**. Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including: (i) the temporary appointment of Philip Spiegelman to act as control person with authority to act for the post-Confirmation Debtor to accomplish the occurrence of the Effective Date; (ii) the issuance, distribution and delivery of the New Riverstreet Equity Interests; (iii) implementation of the Restructuring Transactions as set forth herein; and (iv) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the structure of the Debtor or the Reorganized Debtor, and any entity action required by the Debtor, or the Reorganized Debtor in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Holders of Existing Equity Interests, or members or directors or officers of the Debtor as of Confirmation. The authorizations and approvals contemplated by this Article VI shall be effective notwithstanding any requirements under non-bankruptcy law.

**ARTICLE VII.**

## GOVERNANCE AND MANAGEMENT
## OF THE REORGANIZED RIVERSTREET

**7.1** **Organizational Matters**. Except as otherwise provided under the Plan, Riverstreet will continue to exist after the Effective Date as a Reorganized Debtor in accordance with the applicable laws of the respective jurisdictions in which it is incorporated or organized (or reorganized) and pursuant to the New Constituent Documents, for the purposes of satisfying its obligations under the Plan and the continuation of its business. After the Effective Date, but subject to Article 7.3 of this Plan, Reorganized Riverstreet may amend and restate its respective articles, operating agreements, charters, bylaws, and/or constituent documents as permitted by the applicable laws of the respective jurisdictions in which it is incorporated or organized.

**7.2** **Control Persons of Reorganized Riverstreet**. On the Effective Date, the authority of any and all managers, members, directors, and officers of Riverstreet, as the case may be will automatically expire and all such Persons shall be terminated. As of the Effective Date, NEWCO Holdings will have appointed a board of managers to manage the day-to-day affairs of Reorganized Riverstreet, subject to the oversight of NEWCO Holdings and the member of Reorganized Riverstreet, all as shall be set forth in the New Constituent Documents. As of Confirmation, the Debtor shall be managed by Philip Spiegelman to effectuate the transition to the Effective Date.

Pursuant to Section 1129(a)(5), Riverstreet will disclose in the Disclosure Statement or the Plan Supplement the identity and affiliations of each Person selected to serve on the new board of managers and each Person selected to serve as an officer as of the Effective Date, if any.

**7.3** **Continued Entity Existence**. Except as otherwise provided in the Plan, Reorganized Riverstreet shall continue to exist after the Effective Date as a separate Entity in accordance with the applicable law in the applicable jurisdiction in which it was formed under its respective certificates of incorporation or formation, as applicable, and operating agreement(s) bylaw(s) or similar organizational documents, as applicable, in effect before the Effective Date except as its certificates of incorporation or formation and bylaws or similar organizational documents may be amended pursuant to this Plan. On the Effective Date, without any further entity, corporate or similar action, the operating agreement of Reorganized Riverstreet shall be amended as necessary to satisfy the provisions of this Plan and the Bankruptcy Code and shall include, pursuant to Section 1123(a)(6), a provision prohibiting the issuance of non-voting equity securities.

**7.4** **Effectuating Documents; Further Transactions**. On and after the Effective Date, the Reorganized Debtor, and the officers, managers and members of the boards of directors or board of managers thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

## ARTICLE VIII.
## SALE ALTERNATIVE

**8.1** **Sale of Debtor's Assets.** To the extent the Payment Plan set forth in this Plan Modification or Amendment of this Plan is not approved by the Bankruptcy Court, the Reorganized Debtor will sell their assets free and clear of liens and claims pursuant to a sale process approved by this Court. The proceeds of such sale shall be distributed based upon the following waterfall:

**Riverstreet Sale Proceeds**

a) Payment in full of the Allowed Secured Claim of Lion;

b) Payment of the Allowed Secured Claim of Jam;

c) Payment of the Secured Claim of Mathes Brierre (subject to the pending appeal)

d) Payment of Administrative Expenses;

e) Payment of Priority Claims;

f) Payment of Riverstreet Unsecured Creditors;

g) Payment to Riverstreet Equity Holders.

## ARTICLE XIV
## PROCEDURES GOVERNING PLAN DISTRIBUTIONS

**9.1** **Distributions to Holders as of the Distribution Record Date**. As of the close of business on the Distribution Record Date, the Claims Register and other registers as maintained by the Clerk of the Bankruptcy Court will be closed and there will be no further changes in the record Holder of any Claim. The Reorganized Debtor will not have any obligation to recognize any transfer of any Claim occurring after the Confirmation Date, and the Reorganized Debtor will instead be authorized and entitled to recognize and deal for all purposes under this Plan only with those record Holders stated on the Schedules and/or Claims Register, as the case may be, and other registers as of the close of business on the Confirmation Date.

**9.2** **Distributions for Claims and Equity Interests Allowed as of the Effective Date**. Except as otherwise provided herein or as ordered by the Bankruptcy Court, each Holder of an Allowed Claim shall receive the full amount of the Plan Distributions that the Plan provides for Allowed Claims in the applicable Class. All Cash Plan Distributions shall be made from available Cash of the Reorganized Debtor. Any Plan Distribution hereunder of property other than Cash (including any issuance of the New Riverstreet Equity Interests) shall be made by the Disbursing Agent or the Reorganized Debtor.

**9.3** **Disbursing Agent**. The Disbursing Agent shall make all Distributions required under the Plan. If the Disbursing Agent is an independent third party designated by the Reorganized Debtor to serve in such capacity, such Disbursing Agent shall receive, without further Bankruptcy Court approval, indemnification and reasonable compensation for Distribution services rendered pursuant to this Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Reorganized Debtor on terms acceptable to the Reorganized Debtor. No

Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. If otherwise so ordered, all costs and expenses of procuring any such bond shall be paid by the Reorganized Debtor.

**9.4** **Delivery of Distributions; Undeliverable or Unclaimed Distributions**. Distributions to Holders of Allowed Claims shall be made by the Disbursing Agent, (a) at the Holder's last known address, or (b) at the address in any written notice of address change delivered to the Disbursing Agent. In the event that any Plan Distribution to any Holder is returned as undeliverable, no distribution or payment to such Holder shall be made unless and until the applicable Disbursing Agent has been notified of the then current address of such Holder, at which time or as soon as reasonably practicable thereafter such Plan Distribution shall be made to such holder without interest; provided, however, such Plan Distributions or payments (i) on account of Allowed Claims (as of the Effective Date) shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and subject to this Article 8.4 at the expiration of one year from the Effective Date and (ii) on account of Disputed Claims (as of the Effective Date) shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and subject to this Article 8.4 at the expiration of one year from the date that such Unsecured Claim first becomes an Allowed Claim. The Reorganized Debtor and the applicable Disbursing Agent shall have no obligation to attempt to locate any Holder of an Allowed Claim other than by reviewing the Debtor's books and records, the proofs of Claim filed against the Debtor, and any change of address reflected on the docket of the Bankruptcy Case.

All such unclaimed property or interests in property distributable hereunder on account of such Claim shall revert to the Reorganized Debtor or the successors or assigns of the Reorganized Debtor, and any Claim or right of the Holder of such Claim to such property or interest in property shall be discharged and forever barred, without need for a further order by the Bankruptcy Court and notwithstanding any federal or state escheat laws to the contrary.

**9.5** **Withholding and Reporting Requirements**. In connection with this Plan and all Distributions hereunder, the Reorganized Debtor or Disbursing Agent shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. To the extent the Disbursing Agent is an independent third party rather than the Reorganized Debtor, the Reorganized Debtor shall provide instructions to the Disbursing Agent consistent with the foregoing and the Disbursing Agent shall be entitled to rely on such instructions in effective same. The Reorganized Debtor reserves the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances, and in such event shall so instruct the Disbursing Agent if it is an independent third party.

**9.6** **Setoffs**. The Reorganized Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor or Reorganized Debtor may have against the Holder of such Claim; provided that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any claim that the Debtor or Reorganized Debtor may have against such Holder. Nothing in this Plan shall be deemed to expand rights to setoff under applicable non-bankruptcy law.

**9.7** **De Minimis Distributions**. Notwithstanding anything herein to the contrary, the Disbursing Agent shall not be required to, but shall not be precluded from making any Cash payment of less than $25.00 to the Holder of any Claim on account of its Allowed Claim; any such Holder who would otherwise be entitled to a lesser Distribution shall not receive any Distribution, unless otherwise determined by the Disbursing Agent.

**9.8** **Distributions on Account of Allowed Claims**. All Allowed Claims in a particular Class held by a Creditor shall be aggregated and treated as a single Claim. Any Creditor holding multiple Allowed Claims shall provide to the Debtor a single address to which any distribution shall be sent. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

**9.9** **Disallowed Claims**. In the event the Reorganized Debtor has a Cause of Action under Chapter 5 of the Bankruptcy Code against the Holder of a Claim, then such Claim shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code. If an objection to any such Claim is filed before Confirmation the Holders of such Claims may not vote to accept or reject this Plan until the Cause of Action against such Claimant has been settled or adjudicated by the Bankruptcy Court and any amounts due the Debtor have been received, unless such Holders have obtained an order of the Bankruptcy Court estimating such Claims for voting purposes.

**9.10** **Estimated Claims**. In the event any Claim is estimated for any purposes other than for voting, then in no event will such Claim be Allowed in an amount greater than the estimated amount.

**9.11** **Modification of Payment Terms.** With the written consent of the Holder of any Allowed Claim, to the extent provided in Section 1123(a)(4) of the Bankruptcy Code, the Reorganized Debtor may modify the treatment of any Allowed Claim at any time after the Effective Date.

**9.12** **Security Deposits.** To the extent the Debtor has posted security deposits (with landlords, utilities or otherwise) which are less than the indebtedness secured thereby, those amounts may be set off against Allowed Secured Claims upon the written consent of the Reorganized Debtor or upon entry of a Final Order authorizing such offset.

**9.13** **Time Bar to Cash Payments.** Checks issued by the Reorganized Debtor in accordance with this Plan in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Reorganized Debtor by the Holder of the Allowed Claim to whom such check was originally issued. Any such request in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the sixty (60) day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to the Reorganized Debtor and any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Reorganized Debtor.

**9.14** **Allocation of Plan Distribution Between Principal and Interest**. All Plan Distributions to the extent not otherwise allocated in respect of any Allowed Claim made by the Reorganized Debtor shall be allocated first to the principal amount of such Allowed Claim, as

determined for federal income tax purposes, and thereafter, to the remaining portion of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim). The preceding sentence shall not apply to (i) payment of the DIP Loan Claim, (ii) payment of the Milner Prepetition Claim, or (iii) payment of the Celtic Claim.

## ARTICLE X.
## PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER PLAN

**10.1** **Procedures Regarding Claims**.   Prior to the Effective Date, the Debtor, and, after the Effective Date, the Reorganized Debtor, shall have authority to file, settle, compromise, withdraw or litigate to judgment any objections to Claims.   From and after the Effective Date and prior to the Claim Objection Deadline, the Reorganized Debtor may settle or compromise any Disputed Claim without notice to or action, order or approval of the Bankruptcy Court. The Debtor and Reorganized Debtor shall also be authorized to utilize all defenses against Holders of Class 4 or 5 Unsecured Claims that are not waived or released pursuant to the Plan. Notwithstanding the foregoing, the Reorganized Debtor is not precluded from utilizing defenses to actions against them as may arise post-Effective Date asserting non-dischargeable rights status.

**10.2** **Estimation**. Any Debtor or Reorganized Debtor, as applicable, may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c), regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Reorganized Debtor, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. Each of the aforementioned objection, estimation and resolution procedures are cumulative and are not exclusive of one another.

**10.3** **No Payment on Disputed Claims**.   Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided under the Plan shall be made on account of such Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim. To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. The Disbursing Agent shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under the Plan on a date determined by the Reorganized Debtor, in its sole discretion, after such a Claim becomes an Allowed Claim and shall be deemed to have been made on the Effective Date, without any interest to be paid on account of such Claim.

**10.4** **No Reliance**. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Action against it as any indication that the Reorganized Debtor will not, or may not, pursue any and all available Retained Actions against it. Unless any Retained Action against an Entity is expressly waived, relinquished, exculpated, released,

compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtor expressly reserves all Retained Actions for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Retained Action upon, after, or as consequence of, confirmation or consummation of the Plan. For the avoidance of doubt, all claims, Causes of Action, suits, and proceedings of the Debtor that are not Retained Actions are waived as of the Effective Date.

**10.5** **Objections to Claims.** Except insofar as a Claim is Allowed under this Plan, the Reorganized Debtor shall be entitled to and shall have sole discretion to object to any Claim asserted against the Debtor, and the Reorganized Debtor reserves the right to file any objection to any Claim on or before ninety (90) days after the Effective Date, and such time period can be extended for cause upon request and approval by the Bankruptcy Court. For the avoidance of doubt, the Debtor and the Reorganized Debtor after the Effective Date, specifically reserve and retain discretion to object to the validity, nature and amount of any Claim, except those Claims deemed Allowed under this Plan.

**ARTICLE XI.**
**PROVISIONS GOVERNING EXECUTORY CONTRACTS**
**AND UNEXPIRED LEASES**

**11.1** **Assumption or Rejection of Executory Contracts**. All executory contracts and unexpired leases that existed between the Debtor and any Insider or non-Insider Person or Entity will be deemed to be rejected by the Debtor as of the Petition Date, except for any executory contract or unexpired lease that has previously been assumed pursuant to an order of the Bankruptcy Court or is listed on Schedule 11.1, to be made part of the Plan Supplement. For the avoidance of doubt, the Debtor specifically reserves the right to amend Schedule 11.1 at any time prior to the Confirmation Date. In the event that the Debtor, pursuant to this Section 11.1, adds any executory contract or unexpired lease to Schedule 11.1 prior to the Confirmation Date, the Debtor shall provide written notice to all counterparties to such executory contract or unexpired lease and include therein the amount of any associated Cure Amount Claim, if any. For the avoidance of doubt, listing a contract or lease on Schedule 11.1 will not constitute an admission by the Debtor that such contract or lease is an executory contract or unexpired lease subject to Section 365 of the Bankruptcy Code or that the Debtor has any liability thereunder.

**11.2** **Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases.** Entry of the Confirmation Order will constitute an order of assumption, pursuant to Sections 365 and 1123(b)(2), of the executory contracts and unexpired leases listed on Schedule 11.1, if any, and shall, unless an objection shall have been timely filed and such objection is approved by the Bankruptcy Court to change the Cure Amount claim as set forth on Schedule 11.1, constitute an order approving the Cure Amount Claims as so scheduled. Confirmation shall constitute an order of rejection of all executory contracts and unexpired leases subject to rejection under Section Sections 365 and 1123(b)(2). For the avoidance of doubt, any contract not listed on Schedule 11.1 shall be rejected upon Confirmation, regardless of whether such contract is subject to assumption or rejection as an executory contract or unexpired lease covered by and subject to Section 365.

**11.3** **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to this Plan**. Any Rejection Claim must be filed with the

Bankruptcy Court and served upon the attorneys for the Debtor on or before the Rejection Claim Bar Date. In the event that the rejection of an executory contract or unexpired lease by the Debtor or the Reorganized Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not evidenced by a timely-filed Rejection Claim, will be forever barred and will not be enforceable against the Debtor, the Estate or the Reorganized Debtor.

**11.4** **Payments Related to Cure Amount Claims and Deadline to Object to or Assert any Cure Amount Claim.**

**11.4.1** **Payment of Cure Amount Claims.** With respect to any executory contract or unexpired lease to be assumed pursuant to this Plan, Schedule 11.1 shall set forth the Debtor's proposed Cure Amount Claim, if any, associated with each such executory contract and unexpired lease. Cure Amount Claims will be satisfied, at the option of the Debtor, (1) by payment of the Cure Amount Claim in Cash on the Effective Date or (2) on such other terms as are agreed to by the parties to such Executory Contract or Unexpired Lease. If any counterparty to an executory contract or unexpired lease to be assumed by the Debtor pursuant to this Plan disputes the amount of a Cure Amount Claim or asserts any other dispute regarding the proposed assumption, the payment of any Cure Amount Claim will be made within ten (10) days after a Final Order resolving the dispute and approving the assumption.

**11.4.2** **Objections to Cure Amount Claims.** Assumption of any executory contract or unexpired lease set forth on Schedule 11.1, together with the associated Cure Amount Claim set forth thereon, will be deemed effective as of the Effective Date unless the other party (or parties) to such executory contract or unexpired lease files in the Bankruptcy Case and serves on the Debtor not later than five (5) days prior to the Confirmation Date an objection to (1) the amount of any Cure Amount Claim as set forth on Schedule 11.1; (2) the ability of the Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed; or (3) any other matter pertaining to assumption of such executory contract or unexpired lease.

**ARTICLE XII**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND THE EFFECTIVE DATE**

**12.1** **Conditions to Confirmation.** It shall be a condition to Confirmation of this Plan that the following conditions shall have been satisfied in full or waived:

a. the Bridge Loan Documents shall have been approved in connection with the Confirmation Order;

b. the New Constituent Documents, in form and substance acceptable to NEWCO Holdings (in their reasonable discretion), shall have been approved in connection with the Confirmation Order;

c. the Disclosure Statement shall have been approved by the Bankruptcy Court as having adequate information in accordance with section 1125 of the Bankruptcy Code; and

d. the Confirmation Order shall have been entered on the docket for the Chapter 11 Case

and be in full force and effect.

**12.2** __Conditions to Effective Date.__ It shall be a condition to the Effective Date of this Plan that the following conditions shall have been satisfied in full or waived:

a.   the Bankruptcy Court shall have entered the Confirmation Order;

b.   all actions, documents, certificates, and agreements necessary or appropriate to implement the Plan, including the Plan Supplement, shall have been affected or executed and delivered, as the case may be, to and/or by the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws, and all such documents, certificates and agreements shall be acceptable to NEWCO Holdings;

c.   the Confirmation Order, in form and substance acceptable to the Debtor and NEWCO Holdings (in their reasonable discretion), shall not be reversed, vacated, stayed, amended, supplemented, or otherwise modified, and shall be in full force and effect;

d.   either all permits, authorizations, consents, regulatory approvals, rulings, or documents that are necessary or appropriate to implement and effectuate the Plan shall have been received, or one hundred eighty (180) days have elapsed since the Confirmation Order became a Final Order.

## ARTICLE XIII
## MODIFICATIONS AND AMENDMENTS; WITHDRAWAL

The Debtor may amend or modify this Plan at any time prior to the Confirmation Date. The Debtor reserves the right to include any amended exhibits in the Plan Supplement, whereupon each such amended exhibit shall be deemed substituted for the original of such exhibit. Prior to the Effective Date, the Debtor may, under Section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies within or among this Plan, the Disclosure Statement, and the Confirmation Order, and to accomplish such matters as may be reasonably necessary to carry out the purposes and intent hereof so long as such remedies do not materially and adversely affect the treatment of Holders of Claims hereunder.

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to Section 1127(a) and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

## ARTICLE XIV.
## EFFECTS OF CONFIRMATION

**14.1** __Revesting of Assets__. The all property of the Debtor's Estate shall revest in the Reorganized Riverstreet on the Effective Date. Thereafter, the Reorganized Debtor may operate its businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court. As of the Effective Date, all property of the Reorganized Riverstreet shall be free and clear of all Claims, encumbrances, Equity Interests, charges and Liens except as provided or contemplated herein, in connection with the Bridge Loan, the

Construction Loan, and the Mathes Brierre Judgment. For the avoidance of doubt the Reorganized Riverstreet shall maintain all license and permit rights of Riverstreet or as necessary to operate the business of Riverstreet as of the Petition Date as of and after the Effective Date.

**14.2** **Preservation of Retained Actions**. Except as otherwise provided in the Plan, or in any contract, instrument, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain all claims, rights, Causes of Action, suits, and proceedings, including those described herein and in the Plan Supplement, whether at law or in equity, whether known or unknown, that the Debtor or its Bankruptcy Estate may hold against any Entity (other than claims, rights, Causes of Action, suits, and proceedings released pursuant to this Plan), without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith (collectively, the "Retained Actions"). For the avoidance of doubt, Retained Actions do not include any claim or Cause of Action released pursuant to the Plan. Retained Actions include, without limitation, the appeal of the Mathes Brierre Judgment.

**14.3** **Discharge of Claims and Termination of Interests**. Pursuant to Section 1141(d), and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of claims, Claims, interests, Existing Equity Interests, and causes of action of any nature whatsoever, including any interest accrued on Claims or Existing Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and interests in, the Debtor or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Existing Equity Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Existing Equity Interests relate to services performed by employees of the Debtor before the Effective Date and that arise from a termination of employment, any contingent or noncontingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i), in each case whether or not: (a) a proof of Claim based upon such debt or right is filed or deemed filed pursuant to Section 501; (b) a Claim or Equity Interest based upon such debt, right, or interest is allowed pursuant to Section 502; or (c) the Holder of such a Claim or Existing Equity Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Existing Equity Interests subject to the Effective Date occurring.

**14.4** **Injunction**. **All injunctions or stays provided for in the Riverstreet Chapter 11 Case pursuant to sections 105 and 362 of the Bankruptcy Code or otherwise and in effect on the Confirmation date, shall remain in full force and effect until the Effective Date. Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims, Existing Equity Interests or interests that have been released pursuant to the Plan, discharged pursuant to the Plan, or are subject to exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other**

proceeding of any kind on account of or in connection with or with respect to any such Claims, Existing Equity Interests or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Existing Equity Interests or interests; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Existing Equity Interests or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Existing Equity Interests or interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Existing Equity Interests or interests released or settled pursuant to the Plan.

      14.5    <u>Debtor's Releases</u>. Pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date and to the fullest extent permissible under applicable law, and except as otherwise specifically provided in the Plan, the Debtor, in its individual capacity and as debtor in possession and on behalf of the Estate, and the Reorganized Debtor, in each case on behalf of itself and its respective successors, assigns, and representatives, including without limitation, its predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, advisors, sub- advisors, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, ("<u>Debtor Parties</u>"), and any and all other Entities who may purport to assert any claim or cause of action, directly or derivatively, by, through, for, or because of any of the foregoing Debtor Parties, shall be deemed forever to release, waive, and discharge the Released Parties from any and all claims and causes of action, any claims asserted or assertable on behalf of any holder of any Claim against or interest in the Debtor and any claims asserted or assertable on behalf of any other Entity, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort or otherwise, by statute or otherwise, that the Debtor or Reorganized Debtor (whether individually or collectively), ever had, now has or hereafter can, shall or may have, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring efforts, the Debtor's intercompany transactions (including dividends paid), any preference or Avoidance Action, the purchase, sale, or rescission of the purchase or sale of, or any other transaction relating to any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim, Existing Equity Interest or other interest that is affected by or classified in the Plan, the Restructuring Transactions implemented by the Plan or any other transaction or other arrangement with the Debtor whether before or during such Restructuring Transactions, the negotiation, formulation or preparation of such Restructuring Transactions, the Plan, the Plan Supplement, the Disclosure Statement, or any related agreements, any asset purchase agreement, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the plan or the reliance by any released party on the plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Riverstreet Chapter 11 Case, the filing of the

Riverstreet Chapter 11 Case, the pursuit of Confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place or arising on or before the Effective Date related or relating to any of the foregoing.

Notwithstanding anything contained herein to the contrary, the foregoing releases by the Debtor Parties do not release (i) acts of actual fraud, gross negligence, or willful misconduct as adjudicated by Final Order of the Bankruptcy Court, which shall have exclusive jurisdiction over any such claim, to the fullest extent provided by law, or (ii) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan. For the avoidance of doubt, each executory contract and unexpired lease assumed pursuant to the Plan shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except if such contract or unexpired lease has been modified by the provisions of the Plan or any order of the Court authorizing and providing for its assumption, or applicable law. For the further avoidance of doubt, the foregoing releases do not release or preclude the Debtor or Reorganized Debtor from asserting, any defense or objection to any Claim, including without limitation Avoidance Actions (unless with respect to any Class of Claims Avoidance Actions are waived under the Plan).

14.6 **Releases by Holders of Claims and Existing Equity Interests.** Except as otherwise provided in the Plan, as of the Effective Date and to the fullest extent permissible under applicable law, each Releasing Party expressly, unconditionally, generally, and individually and collectively releases, acquits, and discharges the Debtor, Reorganized Debtor, and Released Parties from any and all claims, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, any Claims asserted or assertable on behalf of any Holder of any Claim against or interest in the Debtor and any Claims or interests asserted or assertable against or interest in the Debtor on behalf of any other entity, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort or otherwise, by statute or otherwise, that such Releasing Party (whether individually or collectively), ever had, now has or hereafter can, shall or may have, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring efforts, any Avoidance Action, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor, or any other transaction relating to any security of the Debtor, or any other transaction or other arrangement with the Debtor whether before or during the Restructuring Transactions implemented by the Plan, the subject matter of, or the transactions or events giving rise to, any Claim, Equity Interest or interest that is affected by or classified in the Plan, the Restructuring Transactions implemented by the Plan, the negotiation, formulation, or preparation of such Restructuring Transactions, the Plan, the Plan Supplement, the Disclosure Statement, or any related agreements, any asset purchase agreement, instruments, or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection the Disclosure Statement, the Plan, the Riverstreet Chapter 11 Case, the filing

of the Riverstreet Chapter 11 Case, the pursuit of Confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place or arising on or before the Effective Date related or relating to any of the foregoing. Notwithstanding anything contained herein to the contrary, the foregoing releases by the Releasing Parties do not release (i) any Person or Entity that is not a Released Party, (ii) acts of actual fraud, gross negligence, or willful misconduct as adjudicated by Final Order of the Bankruptcy Court, which shall have exclusive jurisdiction over any such claim, to the fullest extent provided by law, or (iii) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan. For the avoidance of doubt, the releases granted herein do not release or affect the Retained Actions.

14.7    **Exculpation and Limitation of Liability**. Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any cause of action for any Claim or claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the Disclosure Statement, the Plan, or any Restructuring Transaction under or to be implemented by and under the Plan, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Riverstreet Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order of the Bankruptcy Court, which shall have exclusive jurisdiction over any such claim, to the fullest extent provided by law, to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan, to the fullest extent provided under applicable law, but no further. The Exculpated Parties have, and upon the Effective Date and completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made pursuant to the Plan.

## ARTICLE XV.
## RETENTION OF JURISDICTION

Under Sections 105(a) and 1142, and notwithstanding this Plan's Confirmation and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Bankruptcy Case and this Plan, to the fullest extent permitted by law, including jurisdiction to:

a) hear and determine any and all objections to the allowance of Claims or Existing Equity Interests;

b) hear and determine any and all motions to estimate Claims at any time, regardless of whether the Claim to be estimated is the subject of a pending objection, a pending appeal, or otherwise;

c) hear and determine any and all motions to subordinate Claims or Existing Equity Interests at any time and on any basis permitted by applicable law;

d) hear and determine all Administrative Expense Claims;

e) hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any Claim or required Cure Cost or the liquidation of any Claims arising therefrom;

f) hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case;

g) enter such orders as may be necessary or appropriate in aid of the Consummation hereof and to execute, implement, or consummate the provisions hereof and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

h) hear and determine disputes arising in connection with the interpretation, implementation, Consummation, or enforcement of this Plan and all contracts, instruments, and other agreements executed in connection with this Plan;

i) hear and determine any request to modify this Plan or to cure any defect or omission or reconcile any inconsistency herein or any order of the Bankruptcy Court;

j) issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with or compel action for the implementation, Consummation, or enforcement hereof or the Confirmation Order;

k) enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

l) hear and determine any matters arising in connection with or relating hereto, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

m) enforce all orders, judgments, injunctions, releases, exculpation, indemnification and rulings entered in connection with the Chapter 11 Case;

n) recover all assets of the Debtor and property of the Estate, wherever located;

o) hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146;

p) issue such orders in aid of execution of this Plan to the extent authorized by Section 1142;

q) hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge and any releases or exculpations under this Plan;

r) hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

s) any escrow or interpleader action in connection with the Mathes Brierre Judgment, and

t) enter a final decree closing the Bankruptcy Case.

## ARTICLE XVI.
## MISCELLANEOUS PROVISIONS

**16.1** **Headings; Descriptions**. The foregoing descriptions are for informational purposes only and are not an admission by, nor prejudice the rights of, the Debtor and/or the Reorganized Debtor, in all respects. Moreover, the descriptions contained herein and in any schedule provided in connection with this Plan are not exclusive. The inclusion or exclusion of any actions herein or on any such schedule is in no way a waiver of any claim or Cause of Action whatsoever and all such claims or Causes of Action are reserved and preserved. As of the date hereof, no determination has been made as to whether to pursue any such potential claims or Causes of Action.

**16.2** **Tax Reporting Requirements**. Each Holder of an Allowed Claim that is to receive a Distribution under this Plan will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution.

**16.3** **No Transfer Tax**. Pursuant to Section 1146(a), the following will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment: (a) the issuance, transfer, exchange or conversion of the New Equity Interests; (b) the creation of any mortgage, deed of trust, lien or other security interest under or pursuant to this Plan; (c) any Restructuring Transaction; or (d) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with this Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments executed in connection with any of the foregoing or pursuant to this Plan.

    **16.4**    **Section 1145 Exemption**. On and after the Effective Date, each of the Debtor and the Reorganized Debtor are authorized to and will provide, distribute, or issue, as applicable, the New Equity Interests and any and all other instruments, certificates, and other documents or agreements required to be provided, distributed, issued, executed or delivered pursuant to or in connection with the Plan (collectively, the "Plan Securities and Documents"), in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. The issuance of the Plan Securities and Documents and the distribution in each case thereof under the Plan will be exempt from registration under applicable securities laws (including Section 5 of the Securities Act or any similar state law requiring the registration for offer or sale of a security or registration or licensing of an issuer of a security) pursuant to section 1145(a) of the Bankruptcy Code, Section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder and/or other applicable exemptions. Any Plan Securities and Documents, or other consideration that could be considered securities, to be issued pursuant to the Plan will be issued in reliance upon either section (4)(a)(2) of the Securities Act or Regulation D promulgated thereunder and will be considered "restricted securities" and may not be transferred except pursuant to an effective registration statement under the Securities Act or an available exemption therefrom. Accordingly, the Plan Securities and Documents may be subject to restrictions on transfer under applicable law or as set forth in the governing documents to such Plan Securities and Documents. In addition, however, pursuant to Section 1145, the Plan Securities and Documents may be freely tradable in the U.S. by the recipients thereof, subject to (i) the provisions of Section 1145(b)(1) relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, (ii) compliance with applicable securities laws and any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments, and (iii) the laws and any rules and regulations of any State or federal agency or commission that may restrict or condition the trading of securities of a non- public company.

    **16.5**    **Expedited Tax Determination**. The Reorganized Debtor is authorized under this Plan to request an expedited determination of taxes under Section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtor for any and all taxable periods (or portions thereof) ending after the Petition Date through and including the Effective Date.

    **16.6**    **Dissolution of Statutory Committees and Cessation of Fee and Expense Payment.** On the Effective Date, any Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, this Bankruptcy Case. The Reorganized Debtor shall not be responsible for paying any fees and expenses incurred on or after the Effective Date, if any, by the professionals retained by the Committee.

    **16.7**    **Inconsistent Terms; Controlling Document**. In the event of an inconsistency between the terms of the Confirmation Order or this Plan with the Disclosure Statement, or any other agreement entered into between or among the Debtor and any third party, this Plan shall control.

    **16.8**    **Severability of Plan Provisions**. If, prior to Confirmation, any term or provision hereof is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall

then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**16.9** **Successors and Assigns**. The rights, benefits and obligations of all Entities named or referred to herein shall be binding on, and shall inure to the benefit of, their respective heirs, executors, administrators, personal representatives, successors or assigns.

**16.10** **Binding Effect**. Upon the occurrence of the Effective Date, this Plan shall be binding upon and inure to the benefit of the Reorganized Debtor, all present and former Holders of Claims against and Equity Interests in the Debtors, their respective successors and assigns, including the Reorganized Debtors, all other parties-in- interest in the Bankruptcy Case (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**16.11** **Revocation, Withdrawal, or Non-Consummation.** The Plan Proponents reserve the right, to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization. If the Plan Proponents revoke or withdraw this Plan, or if Confirmation or Consummation hereof does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied herein (including the fixing or limiting to an amount any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (c) nothing contained herein, and no acts taken in preparation for Consummation hereof, shall (x) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Existing Equity Interests in, the Debtor or any other Entity, (y) prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor, or (z) constitute an admission of any sort by the Debtor, or any other Entity.

**16.12** **Plan Supplement**. All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. The Plan Supplement and all documents required to be filed as part of the Plan Supplement shall be filed with the Bankruptcy Court at least ten (10) days prior to the Confirmation Hearing, and specifically shall be provided to any Person or entity affected by Schedule 11.1. Thereafter, any Person may examine the Plan Supplement in the office of the Clerk of the Bankruptcy Court during normal court hours. Copies of the Plan Supplement may also be obtained without charge by contacting counsel for the Holder of the Milner Prepetition Claim and the DIP Loan Claim, at the address listed below.

**16.13** **Notices**. All notices, requests and demands to or upon the Debtor, to be effective, shall be in writing (including by electronic mail transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by electronic mail transmission, when received and confirmed by return electronic mail transmission, addressed as follows:

If to the Debtor, addressed to:

Riverstreet Ventures, LLC
C/O Philip Spiegelman
3300 NE 188th Street
Aventura, FL 33180
philip@riverstreetresidences.com

with a copy to:

Patrick S. Garrity, Esq.
The Derbes Law Firm, LLC
3027 Ridgelake Drive
Metairie, LA 70005
pgarrity@derbeslaw.com

**16.14** **Governing Law**. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to this Plan provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Louisiana without giving effect to its principles of conflict of laws, or, with respect to law applicable to real property, deeds of trust thereupon, mortgages thereupon, and other matters affecting real property, the law of the state in which the real property is located.

**16.15** **Prepayment**. Except as otherwise provided herein or the Confirmation Order, the Debtor and Reorganized Debtor shall have the right to prepay, without penalty or premium, all or any portion of an Allowed Claim at any time; provided that any such prepayment shall not violate, or otherwise prejudice, the relative priorities and parities among the Classes of Claims.

**16.16** **Section 1125(e) of the Bankruptcy Code**. As of the Confirmation Date, the Debtor shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the Bankruptcy Code. As of the Confirmation Date, the Debtor and its Affiliates, agents, directors, managing partners, managers, officers, employees, investment bankers, financial advisors, attorneys, and other professionals shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of the Plan Securities and Plan Documents, and therefore are not, and on account of such offer, issuance and solicitation shall not be, liable at any time for the violation of any law, rule or regulation governing the solicitation of acceptances or rejections hereof, the offer and issuance of the New Equity Interests, or the distribution or dissemination of any information contained in the Plan, the Disclosure Statement, the Plan Supplement, and any and all related documents.

**16.17** **Exhibits/Schedules**. All exhibits and schedules to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

**16.18** **Entire Agreement**. Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged

and integrated into the Plan.

Dated: October 1, 2021                    Riverstreet Ventures, LLC

                                          */s/ Philip J. Spiegelman*
                                          Name: Philip J. Spiegelman
                                          Manager, Riverstreet Ventures, LLC


                                          RESPECTFULLY SUBMITTED:

                                          */s/ Patrick S. Garrity*
                                          PATRICK S. GARRITY (#23744)
                                          ALBERT J. DERBES, IV (#20164)
                                          THE DERBES LAW FIRM, LLC
                                          3027 Ridgelake Drive
                                          Metairie, LA 70005
                                          Telephone: (504) 207-0920
                                          Email: pgarrity@derbeslaw.com
                                          *Attorneys for the Debtor*